**STUDENT SERVICES FOR LESBIANS/GAYS AND FRIENDS, Robert Reed Obenour, Lisa Caron, Sherry Crowell, and David Signor, Plaintiffs,**

v.

**TEXAS TECH UNIVERSITY, John E. Birdwell, J. Fred Bucy, Jerry Ford, Rex Fuller, Nathan C. Galloway, M.D., Larry D. Johnson, Wesley Masters, B.J. Pevehouse, Ann W. Sowell, Lauro Cavazos, Ph.D., Robert H. Ewalt, Ph.D., and Larry M. Ludewig, Ph.D., Defendants.**

Civ. A. No. CA–5–84–240.

United States District Court, N.D. Texas, Lubbock Division.

May 28, 1986.

Karen A. Lerner, Michael B. Charlton, Thomas J. Coleman, Texas Human Rights Foundation, Houston, Tex., Abby R. Rubenfeld, Lamda, Legal Defense and Educ. Fund, Inc., New York City, for plaintiffs.

Jim Mattox, Atty. Gen., State of Tex., Joseph W. Barbisch, Asst. Atty. Gen., State of Tex., Austin, Tex., for defendants.

## MEMORANDUM

WOODWARD, Chief Judge.

On December 6, 1984, the plaintiffs filed their complaint in this case alleging that Texas Tech University, its president, members of its Board of Regents, and other Tech officials, each of whom is sued in

their individual and official capacity, had failed to permit the plaintiff organization to be recognized as an official student organization. Plaintiffs alleged that defendants had intentionally deprived plaintiffs of their constitutional and statutory rights. As a result, plaintiffs sought declaratory relief and a permanent injunction to enjoin defendants' alleged discriminatory policy, damages, costs, and attorney's fees. On January 31, 1984, the defendants filed their motion to dismiss.

On or about April 23, 1985, Texas Tech University recognized the plaintiff organization as an official student organization. Plaintiffs now seek damages based upon the defendants' decision not to recognize the plaintiff organization pending a ruling by the United States Supreme Court in *Texas A & M University, et al. v. Gay Student Services, et al.* The defendants filed a motion for summary judgment on December 20, 1985. Because the plaintiff organization has been recognized, the only issue before the court is what further relief, if any, plaintiffs are entitled to receive.

The defendants' motions to dismiss and for summary judgment encompass common grounds of law and fact.

On the 6th day of May, 1986, a hearing on said motions was held in Lubbock, Texas, with attorneys for all parties present.

After hearing and considering the pleadings, the briefs and argument of counsel, the court files this memorandum which shall constitute its findings of fact and conclusions of law in support of the relief hereinafter ordered.

### I. *The Parties*

There are two categories of plaintiffs in this suit:

(1) the plaintiff organization denied recognition, Student Services for Lesbians/Gays and Friends, and

(2) the individual plaintiffs who are students at Texas Tech University and members of the plaintiff organization.

The defendants are grouped into the following four categories:

(1) Texas Tech University (hereafter University, Texas Tech or Tech);

(2) President Lauro Cavazos, sued in his official capacity and individually;

(3) Past and present members of the Board of Regents (hereafter Board of Regents), named individually, sued in their official capacities and individually;

(4) Vice-President Robert Ewalt and Associate Vice-President Larry Ludewig, sued in their official capacities and individually.

### II. *The Facts*

The chronological sequence of the events and facts in this case are as follows:

1. On or about July 5, 1984, the plaintiffs made application to the proper officials at Texas Tech University to be registered and recognized as an official student organization of the University, and the parties have agreed that the application was in order and no question is raised as to the completeness of this application.

2. On or about July 18, 1984, the application for registration of the plaintiff organization was denied.

3. Prior to February 20, 1980, and prior to the plaintiffs' application to the University in this case, the United States District Court for the Southern District of Texas had denied any relief on a similar complaint by other plaintiffs than those in the instant case, concerning a similar organization seeking recognition at Texas A & M University.

4. On February 20, 1980, the United States Court of Appeals for the Fifth Circuit, in *Gay Student Services v. Texas A & M University*, 612 F.2d 160 (5th Cir.1980) (hereafter Texas A & M), reversed the district court's judgment and remanded same for further hearings.

5. On May 16, 1980, the Fifth Circuit denied a rehearing *en banc*, 620 F.2d 300 (5th Cir.1980), and thereafter the United States Supreme Court denied a writ of cer-

tiorari, 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980).

6. The United States District Court for the Southern District of Texas again considered the *Texas A & M* case and again denied relief to the plaintiffs.

7. On August 3, 1984, the United States Court of Appeals for the Fifth Circuit, in its second opinion in *Texas A & M,* 737 F.2d 1317 (5th Cir.1984), again reversed the district court, thereby affirming the right of the plaintiffs for the requested relief, and remanded for appropriate injunctive and declaratory relief.

8. On December 6, 1984, after the second opinion of the Fifth Circuit in *Texas A & M,* and while an application for writ of certiorari was pending before the United States Supreme Court, the plaintiffs filed their complaint in this suit against Texas Tech University, et al.

9. On April 2, 1985, the United States Supreme Court again denied certiorari in *Texas A & M,* —— U.S. ——, 105 S.Ct. 1860, 85 L.Ed.2d 155 (1985).

10. Some three weeks later, on or about April 23, 1985, Texas Tech duly recognized the plaintiff organization as an official student organization on the Texas Tech campus.

## III. *The Defendants' Arguments*

The defendants allege that plaintiffs are not entitled to further relief, and base their motions on the following arguments:

### A. *Eleventh Amendment Immunity*

■ Defendant Tech alleges in the motion to dismiss that it is immune from damages under the Eleventh Amendment to the United States Constitution. The defendant Board of Regents, the President and other officials of the University also claim such absolute immunity.

On the basis of *Gay Student Services v. Texas A & M University,* 737 F.2d 1317 (5th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1860, 85 L.Ed.2d 155 (1985), and *United Carolina Bank v. Board of Regents,* 665 F.2d 553 (5th Cir.1982), the court finds that each of the defendants, as officials of this State University in their *official capacities,* and Texas Tech University are immune from monetary damages pursuant to the Eleventh Amendment and that they are each entitled to absolute immunity.

Accordingly, the defendants' motion to dismiss is granted as to Texas Tech University and all individually named defendants in their *official* capacities.

### B. *Qualified Immunity For Defendants Not Given Absolute Immunity*

■ First, this defense of qualified immunity is asserted principally on behalf of those defendants who were sued in an individual capacity. Although named as defendants in an individual capacity there is no pleading factually alleging individual acts or conduct by these persons individually (as distinguished from official acts on behalf of Tech). If these individual persons acted only as officials of Texas Tech and not as individual persons no recovery can be allowed against them individually. Failure to allege such individual acts is fatal to plaintiffs' claims in this respect.

Second, the named individual defendants claim that the defense of qualified immunity prevents a damage recovery against them in their *individual* capacities even though absolute immunity might not be available to them under the Eleventh Amendment. *United Carolina Bank, supra.* Defendants allege they are entitled to this defense because they operated, at all times relevant to this suit, within the course and scope of their discretionary authority, with good faith and without the guidance of clearly established law.

Defendants rely upon *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), wherein the United States Supreme Court held that government officials performing discretionary functions, generally are shielded from liability. But *Harlow* is not determinative of the defense claim of qualified immunity, unless certain other factors are present.

In claiming that qualified immunity prevents any monetary, declaratory or injunctive relief to plaintiffs, the defendants contend that, at least in the Fifth Circuit, there was *no* clearly established law vesting a constitutional right in the plaintiff organization to be so recognized. At the time that it was denied registration, on or about July 18, 1984, there were two district court rulings in *Texas A & M*, denying a similar plaintiff's request for recognition as a campus organization. Furthermore, the Fifth Circuit had not at that time entered its second opinion which in effect said that there was such a constitutional right.

The plaintiffs argue, however, that at the time their application was denied in this suit, there were three circuit opinions and two district court opinions granting relief similar to that sought by the plaintiffs in this case. *Gay Students Organization of The University of New Hampshire v. Bonner*, 509 F.2d 652 (1st Cir.1974); *Gay Alliance of Students v. Matthews*, 544 F.2d 162 (4th Cir.1976); *Gay Lib v. University of Missouri*, 558 F.2d 848 (8th Cir.1977), *cert. denied*, 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 789 (1977), *reh'g denied*, 435 U.S. 981, 98 S.Ct. 1632, 56 L.Ed.2d 74 (1977); *Student Coalition for Gay Rights v. Austin Peay State University*, 477 F.Supp. 1267 (M.D.Tenn.1979); *Wood v. Davison*, 351 F.Supp. 543 (N.D.Ga.1972).

The defendants allege that they were placed in a dilemma: were they to depend on other circuits, *supra*, or was the situation so unsettled in the Fifth Circuit at that time that they could not determine what the constitutional rights of the plaintiffs were in this case. The defendants argue that they denied recognition to the plaintiff organization until the law became clearly established by the United States Supreme Court's denial of certiorari in *Texas A & M*.

The plaintiffs allege, however, that the law was clearly established when the defendants denied the plaintiff organization recognition. Therefore, plaintiffs assert that the defendants are not entitled to the defense of qualified immunity.

*The Law as to the Plaintiff Organization Was Clearly Established In Some Circuits*

■ The defense of qualified immunity is not an absolute bar to damages against persons who are sued also in their individual capacity. To be entitled to the defense, the defendants must not have violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* To determine whether an individual may use the defense of qualified immunity, the United States Supreme Court stated in *Harlow* that the following standard should be applied:

> ... On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is resolved, discovery should not be allowed. If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors.

*Id.*, 457 U.S. at 818, 818, 102 S.Ct. at 2738 (emphasis added).

■ Since 1972, five courts have addressed issues similar to those in the present case, however, *Gay Lib v. University of Missouri*, 558 F.2d 848 (8th Cir. 1977), *cert. denied*, 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 789 (1977) is directly on point. There, university officials denied formal recognition to a student organization comprised mostly of homosexuals.

The Eighth Circuit found that the officials' action was a "governmental prior restraint", 558 F.2d at 854, and held that the university's refusal to recognize the plaintiff homosexual student organization "as a campus organization denied plaintiffs their First Amendment rights." *Id.* at 857. On appeal, the United States Supreme Court denied certiorari.

Furthermore, the United States Supreme Court previously dealt with the right of student organizations to be recognized as campus organizations in *Healy v. James,* 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1971). There, a student political group was denied recognition as a campus organization. In reversing the lower courts, the Court stated the following concerning the First Amendment:

> Among the rights protected by the First Amendment is the right of individuals to associate to further their personal beliefs. While the freedom of association is not explicitly set out in the Amendment, it has long been held to be implicit in the freedoms of speech, assembly, and petition.... *There can be no doubt that denial of official recognition, without justification, to college organizations burdens or abridges that associational right.*

*Id.,* at 181, 92 S.Ct at 2346 (emphasis added).

The court finds that the defendants were aware of the law in these other circuits. Furthermore, the court finds that the defendants, each and every one, acted, collectively and singularly, with good faith and in attempting to handle this matter as promptly as possible when the law became settled in the circuit. The defendants forthwith permitted the plaintiff organization to be registered as a recognized student organization pursuant to the United States Supreme Court's denial of certiorari.

However, based upon the cases discussed above and those previously cited, it is this court's holding that the law had not been clearly established by the United States Court of Appeals for the Fifth Circuit on July 18, 1984, when the plaintiffs' application was filed even though the law was clearly established in three other circuits and the United States Supreme Court. However, even though this court finds that the law was clearly established in other circuits, the court should grant the defendants' motion on this issue if extraordinary circumstances are present. The litigation pending during the time period involved in this case would be confusing and certainly pose unusual problems for a layman to unravel until such time as the Supreme Court had finally ruled on the cases pending in this circuit.

*Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 3018, 82 L.Ed.2d 139 (1984), holds:

> Even defendants who violate constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard.

This court finds that the defendants acted reasonably and that extraordinary circumstances existed which prevented the individuals from ascertaining the proper legal standard in the Fifth Circuit. This would grant qualified immunity to those defendants who acted individually and who were not afforded absolute immunity. *Helton v. Clements, et al.,* 78 F.2d 1016 (5th Cir.1986), requires this court to make an early determination of the immunity defenses. For the following reasons the defense of qualified immunity is allowed:

1. The plaintiffs' pleading does not factually allege any acts or conduct by the defendants in their individual capacity, and hence, this alone would bar recovery.

2. Extraordinary circumstances existed which prevented these defendants from knowing of the existence of clearly established law in the Fifth Circuit.

3. The defendants acted reasonably under the circumstances.

4. The defendants at all times acted in good faith.

5. For those defendants acting in their official capacity on behalf of Texas Tech

University and the University itself, the motion to dismiss is granted on the basis of the absolute immunity granted by the Eleventh Amendment.

*Additional Relief*

■ The defendants assert that the declarative and injunctive relief sought by the plaintiffs at this point is moot. The question as to whether plaintiffs can obtain declaratory and injunctive relief on both a retroactive and prospective basis is denied by this court. *Green v. Mansour,* —— U.S. ——, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). The plaintiff organization has been duly recognized as prayed for in its original complaint, and there is no indication that defendants will in any way alter or revoke the recognition, and declaratory and injunctive relief would serve no purpose.

Accordingly, it is ordered, adjudged, and decreed that the defendants' motion to dismiss is granted and judgment will be entered accordingly.